**RIVENDELL FOREST PRODUCTS, LTD., Plaintiff,**

v.

**GEORGIA–PACIFIC CORPORATION and Timothy L. Cornwell, Defendants.**

Civ. A. No. 92–F–489.

United States District Court, D. Colorado.

Feb. 22, 1993.

Brice A. Tondre, Strate and Tondre, P.C., Wheat Ridge, CO, for plaintiff.

Gregg I. Anderson, Scott S. Havlick, Holland and Hart, Denver, CO, for defendants.

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving alleged misappropriations of trade secrets. This matter comes before the Court on the motion for summary judgment filed by the defendants, Georgia–Pacific Corporation and Timothy L. Cornwell (collectively, "Georgia–Pacific") and the subsequent cross-motion for summary judgment by the plaintiff, Rivendell Forest Products, Ltd. ("Rivendell"). Jurisdiction is based on 28 U.S.C.A. § 1332 (West 1992). The parties have fully briefed the matter. For the reasons stated below, Georgia–Pacific's motion is GRANTED and Rivendell's is DENIED.

### I. Background

Plaintiff Rivendell, now out of business, was a reload wholesaler in the lumber industry.[1] It purchased milled lumber from Canadian mills and had that lumber shipped to and unloaded at any of about ten lumber yards it leased. Defendant Timothy Cornwell went to work for Rivendell in January 1987 and worked there until March 1990. While at Rivendell, Cornwell supervised employees using Rivendell's price quoting screen (the "Quote Screen") to quote prices to customers. He had no involvement in the development of the Quote Screen program's software. By using the Quote Screen, Rivendell was able to instantaneously quote to customers lumber prices, including freight, thereby allowing Rivendell to become more efficient in handling customer inquiries and eliminating the need for time-consuming manual calculations. Rivendell claims the "Quote Screen" system allowed it to be 20 to 30 times faster and to generate two to three times more sales, giving it a huge advantage over competitors, like Georgia–Pacific, who were still using much slower manual systems. Apparently in part to protect the Quote

Screen system, Rivendell asked all employees to sign a confidentiality agreement in 1988 and Rivendell claims all employees did so. Rivendell further advised its employees that the business practices of Rivendell were trade secrets.

Defendant Georgia–Pacific is a supplier and wholesaler of lumber and lumber products. After Cornwell left Rivendell in March 1990, Georgia–Pacific hired Cornwell as marketing manager of Canadian lumber for Georgia–Pacific's distribution division. Rivendell alleges that soon after Cornwell arrived at Georgia–Pacific, he helped them to develop a "Quick Quote" system that borrowed heavily from trade secrets embodied in Rivendell's own Quote Screen. Rivendell alleges that shortly after Cornwell began work at Georgia–Pacific, he received an orientation from Georgia–Pacific employees Ken Porter and Dean Johnson. During the orientation, Cornwell was shown a demonstration of Georgia–Pacific's Noranda computer program. He allegedly stated he had a much better program, went to his office, and returned with a far more sophisticated program. Porter recalled in his deposition that the name "Rivendell" was mentioned in connection with the program. Rivendell cites this as both a clear violation of the confidentiality agreement Cornwell signed with Rivendell and evidence of a misappropriation of trade secrets.

Rivendell brought this suit two years after Cornwell left its employment, alleging tortious interference with contract, breach of contract, and theft of trade secrets. Rivendell alleges that while Cornwell worked for Rivendell, he had access to and gained knowledge of its highly sophisticated and customized computer software system. After reading a description of Georgia–Pacific's "Quick Quote" system, L.G. Broderick, Rivendell's former owner and chief executive officer, claimed the two systems were "virtually identical."

### II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of

---

1. All factual recitations in this Order have been alleged in the litigants' pleadings.

material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo. 1990).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo. 1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56· does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2553. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106

S.Ct. at 2552. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir. 1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir. 1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III. Misappropriation of Trade Secrets

Georgia–Pacific does not dispute that trade secrets may exist in the implementation or expression, that is, in the computer source code, of Rivendell's Quote Screen software. The questions we must address, then, are whether either Georgia–Pacific copied Rivendell's source code, or Rivendell's Quote Screen contained a protectible combination of concepts or ideas used by Georgia–Pacific. Rivendell has adduced no facts tending to show that Georgia–Pacific copied its source code. Rather, Rivendell relies on the inference that Georgia–Pacific must have misappropriated the trade secret it defines as the Quote Screen's unique method of integrating various concepts and ideas, even though those concepts and ideas were already in existence in the computerization of the lumber industry.

In order to establish its claim that Georgia–Pacific misappropriated trade secrets, Rivendell must prove: (1) a trade secret existed; (2) Georgia–Pacific and Cornwell misappropriated the trade secret

through a confidential relationship; and (3) Georgia–Pacific and Cornwell used the trade secret without authorization from Rivendell. *See Black, Sivalis & Bryson, Inc. v. Keystone Steel Fabricators,* 584 F.2d 946, 951 (10th Cir.1978). Georgia–Pacific claims that the second element of proof is irrelevant if the first and third are not satisfied and so does not challenge whether there occurred any misappropriation of a trade secret through a confidential relationship. The elements of existence and use are closely entwined and to some extent will be addressed together.

## A. Existence of a Trade Secret

Colorado's Uniform Trade Secret Act ("the Act") defines a trade secret as:

> the whole or any portion or phrase of any scientific or technical information, *design, process, procedure, formula, improvement,* confidential business or financial information, listing of names, addresses, or telephone numbers, *or other information relating to any business or profession which is secret and of value.* To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

C.R.S. § 7–74–102(4) (emphases added).

■ Colorado courts interpreting the Act apply several factors in determining whether a trade secret exists, including: (1) the extent to which the information is known outside the plaintiff company; (2) the extent to which the information is known to persons inside the plaintiff company; (3) the reasonable precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the value of the information to the plaintiff company; (5) the money and effort expended in obtaining and developing the information; and (6) the time and expense that would be required for competitors to acquire the information. *Colorado Supply Co., Inc. v. Stewart,* 797 P.2d 1303, 1306 (Colo.App.1990); *Network Telecommunications v. Boor–Crepeau,* 790 P.2d 901 (Colo. App.1990).

On summary judgment, we are obliged to note there are disputed issues of fact on items three and four above. Rivendell states it tried to maintain the secrecy of its Quote Screen and that the Quote Screen granted it a substantial competitive advantage, took nine years to develop, and cost nearly one million dollars; Georgia–Pacific disputes the secrecy measures taken, has little to say about any competitive advantage, alleges far less time in development, and claims a cost to Rivendell in the neighborhood of ten thousand dollars. Most of our discussion will address the first factor, the extent to which the information is known outside the plaintiff company, because if Georgia–Pacific is to prevail on summary judgment, it must defeat Rivendell's allegations that it developed a method or system of integrating commonly known concepts and ideas into something valuable and not publicly available or already known to Georgia–Pacific.

In a letter to Georgia–Pacific's counsel, Rivendell's counsel outlined what Rivendell considered its trade secrets. Behind the Quote Screen, Rivendell stated, were several databases:

1. Customer master file—all information on the customer

2. All current credit information on the customer

3. All current sales prices on all inventory items at all distribution facilities

4. "Real-time" inventories on all items at all distribution facilities

5. "Real-time" delivery status on all inventory "in transit" or on order with mills

6. Current lowest truck transportation rates and mileage from all distribution facilities to the thousands of known customer or prospective customer destinations

7. Bundle sizes of each item at all distribution facilities

8. Weight per MBF of all items, at all yards, by specie and dryness

Furthermore, interacting with these databases was software which made the following calculations:

1. Automatic board footage conversions

2. Automatic calculation of the dollar value per item, per thickness/width, and on entire inquiry

3. Automatic calculation of FOB yard delivered customer destination prices

4. Automatic calculation of weights per bundle, per thickness/width, and on entire inquiry

5. Automatic calculation of inventory availability by item

6. Automatic calculation of real dollar premium or discount to list price being offered by or to customer

Georgia–Pacific claims all of the concepts and ideas (e.g., the databases and functions performed) claimed by Rivendell as its trade secrets were known to and collectively already used by Georgia–Pacific before the alleged misappropriation and before Cornwell was hired. In particular, prior to Cornwell's hiring, two other divisions of Georgia–Pacific were using computer systems that, between them, performed nearly all the functions identified by Rivendell as constituting its trade secrets.[2] Moreover, Georgia–Pacific has provided an exhibit showing that its Quick Quote system has in common with Rivendell's Quote Screen only two attributes: display of bundle sizes and calculation of board-footage conversions. Bundle size is a constant set by the supplying mill; board-footage calculations are standard industry calculations necessary for selling lumber. Rivendell does not dispute Georgia–Pacific's assertion that both functions are "functional constraints of the lumber industry." Accordingly, neither function is a trade secret in and of itself. Georgia–Pacific concludes that the concepts and ideas embodied in Rivendell's Quote Screen were well known throughout the lumber industry and in particular by Georgia–Pacific. In any event, Georgia–Pacific claims, its own Quick Quote system used only two, unprotectible functions.

Rivendell's responses to this argument are generally unpersuasive. Rivendell first places great weight on Georgia–Pacific's failure to show that Georgia–Pacific's allegedly similar, publicly available systems were ever seen by Cornwell prior to developing the Quick Quote system. There is no relevance to such information. Where a defendant claims that a so-called 'trade secret' is in fact public knowledge, it makes no difference whether the defendant obtained that knowledge from the plaintiff, the defendant's own information, or the public library. Rivendell next asks rhetorically why, if Georgia–Pacific had such computer capability, it had to hire Cornwell to "develop[ ] a new computer system." Such rhetorical questions do little to advance Rivendell's burden of going forward on summary judgment. Rivendell also states, incorrectly, that Georgia–Pacific's Quick Quote has more than two similar functions. Regardless, it is clear that protection could not be extended merely to the publicly available functions or elements of Rivendell's Quote Screen. Finally, Rivendell states that Georgia–Pacific has misunderstood Rivendell's trade secret claim, and that the trade secret is Rivendell's *software,* while the concepts and ideas embodied in the software are merely what makes it so important and valuable to Rivendell.

This argument puts us back where we began. Much of the confusion in Rivendell's arguments stems from the fact that when it argues for the *existence* of a trade secret, it points generally to its software, secure in the knowledge that some part of that software, whether or not appropriated by Georgia–Pacific, contains a trade secret. By contrast, when Rivendell argues that Georgia–Pacific has *used* its trade secrets, unable to claim the software has been copied or otherwise compromised, Rivendell focuses broadly on the concepts and ideas contained in the software.[3]

**2.** Rivendell initially claimed the databases and functions performed were themselves its trade secrets, but has wisely modified this position as illustrated below.

**3.** Rivendell's failure to adhere to the distinction between use and existence on the one hand and between concepts and implementation on the

other lead it to point to the proprietary rights notice on Georgia–Pacific's Quick Quote software. The notice states that the software "contains valuable trade secrets." Rivendell cites this as an admission by Georgia–Pacific that the two systems, inasmuch as they are alike, both contain valuable trade secrets. However, Rivendell misses the distinction between Georgia–Pacific's pro-

But the concepts and ideas are not protectible, and by declaring its trade secret to be its software, Rivendell makes the unsupportable, contradictory suggestion that Georgia–Pacific appropriated its source code. However, Rivendell has long admitted and does not now deny that Georgia–Pacific did not copy its source code. Furthermore, Rivendell's expert examined the parties' source codes, display screens, file layouts, and detailed program designs without rendering an opinion as to *any* similarity between the programs. Fortunately, Rivendell ultimately returns to its true claim: the combination of these concepts and their integration into a single, workable and highly sophisticated computer software package is its trade secret. Georgia–Pacific's existing systems were not so expertly integrated as Rivendell's, and thus did Georgia–Pacific come to require the services of Cornwell.

In the terminology of trade secret law, Rivendell appears to be claiming not that Georgia–Pacific misappropriated its concepts and ideas, which are not protectible anyway, but their *integration or implementation.* Although Rivendell at times inconsistently disputes [4] whether trade secret law contains such a distinction, the case law, including cases cited by Rivendell, is replete with it. *See, e.g., Integrated Cash Management Service v. Ditigal Transactions,* 732 F.Supp. 370, 376 (S.D.N.Y.1989) (holding combination of publicly available source code concepts provided plaintiff with competitive advantage and was therefore a trade secret); *Computer Print Systems, Inc. v. Lewis,* 281 Pa.Super. 240, 422 A.2d 148, 153 n. 3 (1980) (noting concept of developing programs to expedite direct mail advertising was not a trade secret because it is public knowledge, but specific programs to implement the concept were trade secrets); *Cybertek Computer Products, Inc. v. Whitfield, et al,* 203 U.S.P.Q. 1020 (BNA), 1977 WL 22730 (Ca.Super 1977) (noting that general, well-known concepts are not

protectible as trade secrets, but specific implementation of their combination may be).

■ The Tenth Circuit in *Kodekey Electronics, Inc. v. Mechanex Corporation,* 486 F.2d 449 (10th Cir.1973) noted that " '[n]ovelty and invention are not requisite for a trade secret as they are for patentability ... *The protection is merely against breach of faith and reprehensible means of learning another's* [sic] *secret.'* " *Id.* at 455, *quoting* Restatement of Torts § 757, comment b at 6–7 (emphasis in original quotation). When we say that Rivendell must show some special, protectible attribute of its combination of commonly available concepts and ideas, then, we are not saying that it must show them to be novel, but rather it must point to some justification for their secrecy. It would make little sense to allow individuals to throw veils of secrecy around the most common things, all in an attempt to establish their claim to a trade secret and then to prohibit others from appropriating their 'secret.' But "[s]imply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status." *Jostens, Inc. v. National Computer Systems, Inc., et al,* 318 N.W.2d 691, 699 (Minn.1982).

■ It is here that Rivendell fails to bear its summary judgment burden of designating specific facts showing genuine issues for trial on any element challenged by the motion. *See Tillett,* 931 F.2d at 639. Its conclusory allegations that it holds a secret method of combining concepts and ideas for computerization of the lumber business, without more, do not establish issues of fact sufficient to defeat summary judgment. *See McVay,* 823 F.2d at 1398. Rivendell offers no facts to suggest either that it had a protectible methodology for implementing the combination of concepts and ideas; that Georgia–Pacific appropriated any protected implementing

gram source code, which, like Rivendell's, is probably protectible, and the concepts or ideas embodied therein, which are not. The proprietary rights label is an entirely justifiable, generalized assertion that Georgia–Pacific's software contains some protectible material. This assertion is consistent with the distinction maintained

throughout Georgia–Pacific's briefs and this opinion.

4. Rivendell cites in detail the cases which follow this footnote to show that a combination of commonly available concepts and ideas may be protectible.

methodology, rather than the unprotectible elements or functions common to both programs; or that Georgia–Pacific's resulting program is similar to Rivendell's in protected particulars. Rivendell makes only bare, unsupported allegations on every point, yet even these bare allegations are refuted with specificity by Georgia–Pacific.

### B. Unauthorized Use of a Trade Secret

Rivendell does not dispute Georgia–Pacific's assertion that Georgia–Pacific already had access to all the elements of Rivendell's Quote Screen and that Georgia–Pacific used only two such elements in its Quick Quote system. Rivendell does not even allege the two functions are integrated by its own, protectible method of combination. Rather, near the conclusion of its brief, Rivendell ends with a statement not supported anywhere in its pleadings: "it is clear [Cornwell] used Rivendell trade secrets in developing the 'Quick Quote' system, either by taking some physical documentation or using his knowledge of the system." Without a showing that the two systems are similar in some protectible particular, there is no such clarity in Rivendell's claim.

▇▇▇▇▇ Trade secret misappropriation can be established despite the lack of any copying or physical appropriation. *Velo–Bind, Inc. v. Scheck,* 485 F.Supp. 102, 107 (S.D.N.Y.1979). Knowledge attained while working for the holder of the trade secret or memory alone are sufficient. *Cybertek,* 203 U.S.P.Q. 1020, 1977 WL 22730, *Digital Transactions,* 732 F.Supp. at 378. However, contrary to what Rivendell told its employees, business practices hold at best a tenuous claim to being trade secrets. In *Fishing Concepts v. Ross, et al,* 226 U.S.P.Q. 692, 695, 1985 WL 1549 (D.Minn.1985), for example, the Court held that concepts regarding how to market Canadian fishing lodges were not trade secrets but merely "sound business practices." By Rivendell's failure either to make a claim that Cornwell physically appropriated Rivendell's source code; that he held in his mind Rivendell's source code and later gave it to Georgia–Pacific; that he relayed to Georgia–Pacific some relatively novel method of combining commonly known concepts; or

that Georgia–Pacific ended up with a very similar system, Rivendell is unable to establish any more than that Cornwell took to Georgia–Pacific his knowledge that certain databases and business techniques lend themselves to speedy customer service. We could not hold as valid an agreement that absolutely prohibited a person from carrying on his or her career by taking generalized business knowledge from job to job. For these reasons and the reasoning we employed to find Rivendell failed to make out a claim for the existence of a trade secret, we find that nothing protectible was used.

### IV. Confidentiality Agreements and Common Law Duty of Nondisclosure

▇▇▇▇▇ Rivendell also claims Cornwell breached his confidentiality agreement with Rivendell and that Georgia–Pacific induced that breach. However, there was no evidence that Cornwell received anything— higher wages, a promotion, access to technical aspects of Rivendell's system—as a result of his voluntary signing of the agreement. The confidentiality agreement is thus void for lack of consideration. *See, e.g., Jostens,* 318 N.W.2d at 703–04 (noting that where party to post-employment confidentiality agreement was awarded no increased wages, promotions, or access, consideration was inadequate and agreement void). Furthermore, confidentiality agreements are enforceable in Colorado only to the extent "confidential information [was] acquired during the course of employment ... [and] not the general knowledge of a business operation." *Mulei v. Jet Courier Service, Inc.,* 739 P.2d 889, 892 (Colo.App.1987). As with trade secrets, "[i]nformation already known to competitors or readily ascertainable elsewhere cannot be protected as confidential." *Id.* For the reasons explained in greater detail in our discussion of trade secrets, we find no showing by Rivendell that its agreement is enforceable, under contract or common law, or that Cornwell disclosed anything that could be justifiably considered confidential.

▇▇▇▇ Rivendell also asserts the agreement is a covenant not to compete. The title and language of the agreement make this claim

doubtful, but even if it were a covenant not to compete, it would be void because it lacks reasonable durational and geographic limits. *See National Graphics v. Dilley*, 681 P.2d 546, 547 (Colo.App.1984).

## V.

Accordingly, it is ordered that:

(1) Defendants' Motion for Summary Judgment, filed December 2, 1992, is GRANTED.

(2) Plaintiff's cross-motion for summary judgment, incorporated into its Brief in Opposition to Defendants' Motion for Summary Judgment, filed December 30, 1992, is DENIED.

(3) The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants, Georgia–Pacific Corporation and Timothy L. Cornwell and against Rivendell Forest Products, Ltd.

(4) All parties to bear their own costs.