**RIVENDELL FOREST PRODUCTS, LTD., Plaintiff–Appellant,**

**v.**

**GEORGIA–PACIFIC CORPORATION and Timothy L. Cornwell, Defendants–Appellees.**

**No. 93–1110.**

United States Court of Appeals, Tenth Circuit.

June 30, 1994.

Rehearing Denied Aug. 1, 1994.

Brice A. Tondre of Strate and Tondre, P.C., Wheat Ridge, CO, for plaintiff-appellant.

Gregg I. Anderson (Scott S. Havlick, with him on the briefs) of Holland & Hart, Denver, CO, for defendants-appellees.

Before KELLY and SETH, Circuit Judges, and OWEN, District Judge *.

\* Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

SETH, Circuit Judge.

This suit concerns an aspect of the lumber business in which both Plaintiff, Rivendell Forest Products, Inc., and the Defendant, Georgia–Pacific Corporation (G.P.), were engaged. Defendant Cornwell was employed originally by Rivendell and later by G.P. Rivendell was a wholesaler of lumber known as a "reload wholesaler" which provided lumber of the kind and sizes needed by its customers, quoted prices, and advised them as to delivery. It had a number of storage yards. G.P. was as to this aspect of its business a competitor of Rivendell.

Rivendell brought suit against G.P. for wrongful appropriation of a trade secret. The suit was also against Cornwell for a violation of confidence. The suit centers on a *computer software system* which Rivendell had developed over the years, and which system it asserted to be a trade secret under Colorado law. It asserts that this system enabled Rivendell to provide its customers with special service, and to manage its distribution centers as no competitor could do. This was a computer system which enabled Rivendell employees to give immediate answers to customers' questions and phone inquiries as to prices, quantities, places, and delivery time as to various lumber sizes and types without any computations which required a delay and a call back to the customer. It asserted that at the pertinent time no other wholesaler could provide such service and management, and this gave Rivendell a large advantage over its competitors including G.P. It is this *software system* that Rivendell asserts was its trade secret.

The Defendants filed a motion for summary judgment and the case was heard on affidavits and depositions. The trial court ultimately granted Defendant G.P.'s motion for summary judgment, 824 F.Supp. 961. It does not appear necessary to decide whether Rivendell made a counter-motion for summary judgment or only an argument in a brief.

The complaint was based on Colorado's Trade Secret Act, C.R.S. § 7–74–102(4) (1986 Repl.Vol.), which provides:

"'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."

C.R.S. § 7–74–102(2) (Rep.Vol.1986) defines misappropriation of a trade secret as:

"(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

"(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

"(I) Used improper means to acquire knowledge of the trade secret; or

"(II) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

"(A) Derived from or through a person who had utilized improper means to acquire it;

"(B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

"(C) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; ...."

Our court in *Telex Corp. v. I.B.M.*, 510 F.2d 894 (1975), and in *Kodekey Electronics, Inc. v. Mechanex Corp.*, 486 F.2d 449 (1973), discussed the definition of "trade secrets" generally. This parallels the definition in the Colorado statutes and in *Colorado Supply*, both quoted above. In *Telex* we stated:

"In the recent case of *Kodekey Electronics, Inc. v. Mechanex Corp.*, 486 F.2d 449 (10th Cir.1973), we hewed to the oft-repeated statement, found in the Restatement of the Law of Torts, § 757, Comment b, that a trade secret consists of any formula, patent, device, plan, or compilation

of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it. In that case we also noted that generally just what constitutes a trade secret under the above definition is a question of fact for the trial court."

The Colorado court in *Colorado Supply Co. v. Stewart,* 797 P.2d 1303 (Colo.App. 1990), set forth the several elements which can be used to identify a trade secret as follows:

"Although an exact definition of a trade secret may not be possible, the following factors may be considered in the determination whether a trade secret exists:

"1) The extent to which the information is known outside the business;

"2) The extent to which it is known to those inside the business i.e., by the employees;

"3) The precautions taken by the holder of the trade secret to guard the secrecy of the information;

"4) The savings effected and the value to the holder in having the information as against competitors;

"5) The amount of effort or money expended in obtaining and developing the information; and

"6) The amount of time and expense it would take for others to acquire and duplicate the information."

There seems to be no present difference of opinion as to whether computer software is protected under the typical trade secret statutes and doctrine. *See* 38 Geo.Wash.Law Rev. 909.

In *Kodekey* we contrasted the considerations in patent law with the factors relating to trade secrets and noted that novelty and invention are not elements of the trade secret doctrines. We stated:

"The Restatement of Torts § 757, comment b at 6–7 (1939) is to the contrary. 'Novelty and invention are not requisite for a trade secret as they are for patentability ... (here a discussion of patent law). But such is not the case with a trade secret. Its protection is not based on a policy of rewarding or otherwise encouraging the development of secret processes or devices. *The protection is merely against breach of faith and reprehensible means of learning anothers secret.'* "

The patent law-trade secret mix in the trial court's consideration will be later considered. We also stated in *Kodekey* that what constitutes a trade secret is a question of fact.

This computer software system in issue, Rivendell asserts, took it nine years to develop at a cost of nearly a million dollars. Mr. Cornwell worked for Rivendell in this development, knew it well, and had a significant role although he was not a computer expert. While working for Rivendell he was contacted by an executive of G.P., and two months thereafter was hired by G.P. with a job description to develop a new computer software system for G.P. This new system had become necessary with the decision by G.P. to consolidate its entire Distribution Division which consisted of about 100 distribution centers. G.P. had no need before the consolidation decision for such a new system, and there had been none in place. After the decision to consolidate G.P. contacted Cornwell and he was offered the task to develop a system quickly to permit the consolidation.

Rivendell's system was the only one Cornwell had been familiar with, and was the only one then in the industry which could provide immediate answers on all aspects of the customers' needs. He was not a computer expert, as mentioned, but immediately after being hired by G.P. he went to work on a computer system for G.P. This system was *very soon* developed, and it was for all practical purposes the same as the one at Rivendell.

The trial court, in considering the summary judgment motion, acknowledged that there were essential disputed issues of fact presented as to two essential elements of Colorado's Trade Secret Act (C.R.S. § 7–74–102(4) ). These elements were "the value of the information to the plaintiff company" and "the reasonable precautions taken by the holder of the trade secret to guard the secrecy of the information." The court cited *Colorado Supply Co., Inc. v. Stewart,* 797 P.2d 1303, 1306 (Colo.App.1990).

The record demonstrates that the affidavits, depositions, and briefs submitted to the trial court by the parties on the summary judgment motion showed that the trial court was presented with a number of genuine issues of material facts. These were facts which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court made determinations of contested essential facts, and in some instances the determinations were the result of a choice of credibility between conflicting affidavits or depositions.

The trial court, as mentioned, acknowledged that there were issues of fact presented as to two elements of the Colorado Trade Secret Act and resolved them. However, in our view, the basic issue was and is whether the computer system of Rivendell was a "trade secret" appropriated by G.P. As mentioned, the authorities hold that what constitutes a trade secret and whether one exists, as claimed, is an issue of fact. Whether Rivendell's computer system was a "trade secret" was sought to be resolved in the summary judgment proceedings.

The issue whether there was a trade secret was thus the most seriously contested issue in the summary judgment proceedings. The Defendant G.P. challenged the facts presented by Rivendell with its own facts. The trial court resolved this dispute by holding that there was no trade secret. This determination necessarily required the resolution of disputed essential facts. This also required on this issue, and on the issue of misappropriation, a determination of credibility.

This issue as to whether there was a trade secret was complicated by the trial court's method for its factual examination of the asserted trade secret. The court required that the software system be examined bit by bit with the further requirement that Rivendell demonstrate protectability of its elements or some of them rather than the protectability of the software system as a whole. The trial court at page 11 of its order states the basic analysis it applied: "Without a showing that the two systems are similar in some protectable particular, there is no such clarity in Rivendell's claim." The authorities

recognize that a trade secret such as the one here claimed can consist of a combination of elements which are in the public domain. This was held originally in *Imperial Chemical Indus., Ltd. v. Nat'l Distillers & Chemical Corp.*, 342 F.2d 737 (2d Cir.1965). The same court again considered the issue in *Integrated Cash Management Serv., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171 (2d Cir.1990), and in substance adopted the following quotation from *Imperial Chemical Industries* that the case was covered by the operation of

> "the general principle that a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."

(Citations omitted.) *See also Cybertek Computer Products, Inc. v. Whitfield*, 203 U.S.P.Q. (BNA) 1020, 1977 WL 22730 (Cal.Super.Ct.).

■ The trial court also did not apply the doctrine described as follows in *Kodekey*, again:

> " 'Novelty and invention are not requisite for a trade secret as they are for patentability ... (here a discussion of patent law).... *The protection is merely against breach of faith and reprehensible means of learning anothers secret.'* "

A determination as to the existence of a trade secret as a fact issue requires doubts as to existence of triable issues of fact which must be resolved in favor of the existence of triable issues. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891 (10th Cir.1991), and *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882 (10th Cir.1991).

Rivendell presented facts in affidavits and depositions. These facts were not "arguments" as the trial court's order seems to hold. The facts related to basic issues as did the facts presented by G.P.

■ We must disagree with the trial court's first statement above that Rivendell had not shown it had a protectable methodology. In our view, the record demonstrates

that such a methodology implementing the combination of concepts and ideas was shown. The record establishes the production by Rivendell's software system of immediate final pricing by the integration of the many computations as to size of lumber, type of lumber, location of the lumber, size of bundles, freight charges, time of delivery, and other factors to permit the immediate quotation of a total price. This was a basic factual demonstration of the integration obtained by the software, and it was a total package for immediate use. It was the only system in the industry which could accomplish this. G.P. had nothing comparable before the Defendant Cornwell was hired away from Rivendell. At best G.P. had a scattering of unrelated elements in the 100+ offices, and had no need for an integrated system until it decided to consolidate its offices. The evidence as to the quick development (four months) after Cornwell went to work for G.P. with the affidavits that the G.P. employees used Cornwell's ideas and the fact that Cornwell had never seen G.P.'s scattered systems before he developed G.P.'s Quick Quote integrated system were important because they demonstrated that he and G.P. relied entirely on Rivendell's system. He was not a computer expert at Rivendell or G.P. The position of G.P. and apparently of the trial court was that throughout G.P.'s large organization with many offices there could be found separately the elements of the Rivendell system. But the fact remained and the testimony of Gary Mote, a G.P. employee, showed there was no prior interest in G.P. to develop a new system. The company decision to integrate its many offices led to the hiring of Cornwell for the purpose of developing a new system; from the fact that the G.P. system was almost identical, the conclusion could well be reached at a trial that G.P. appropriated Rivendell's system.

■ The trial court in the above quotation refers to unprotected elements or functions, and so would examine the separate elements rather than the combination. We hold that the doctrine has been established that a trade secret can include a system where the elements are in the public domain, but there has been accomplished an effective, successful and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage which is protected from misappropriation.

We express no opinion on the issues relating to whether sufficient secrecy was sought to be maintained by Rivendell, nor do we express an opinion on whether the individual acted contrary to his confidentiality agreement with Rivendell.

The case as presented in this appeal was not within the accepted scope of summary judgment proceedings. There remain substantial material fact questions not yet resolved, and there were as well such issues resolved by summary judgment which should not have been decided in such proceedings.

The case must be REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.