**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 6 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

HARVEY BARNETT, INC., a Florida
corporation; INFANT SWIMMING
RESEARCH, INC., a Florida
corporation,

    Plaintiffs-Appellants,

v.

ANN SHIDLER, individually and
d/b/a Infant Aquatic Survival; JUDY
HEUMANN, individually and d/b/a
Infant Aquatic Survival; ALISON
GEERDES, individually and d/b/a
Infant Aquatic Survival,

    Defendants-Appellees.

No. 02-1047

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-B-731 (OES))**

---

Douglas Jaffe of San Diego, California, for the Plaintiffs-Appellants.

Mark W. Fischer (Kristin M. Berdan with him on the brief), Faegre & Benson,
LLP, Boulder, Colorado for the Defendants-Appellees.

---

Before **SEYMOUR**, **McKAY,** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Plaintiffs Harvey Barnett, Inc. and Infant Swimming Research, Inc. (collectively, "ISR") filed a complaint against three former employees, alleging state-law claims of misappropriation of trade secrets, breach of contract, and unjust enrichment, as well as claims of unfair competition and deceptive trade practices under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105. ISR further alleged federal claims of trademark infringement and misleading trade practices in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. Finding that ISR failed to produce sufficient evidence with respect to any of its claims, the district court granted summary judgment to the defendants. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

**I**

In 1966, Dr. Harvey Barnett, the founder and president of ISR, began to develop the Infant Swimming Research program ("ISR program"), which plaintiffs describe as a "<u>scientific</u>, behavioral approach to pediatric drowning prevention." (Appellants' Br. at 4.) ISR's program utilizes a method known as "swim, float, swim," and contains nearly two-thousand "prompts and procedures" for teaching infants as young as six-months old how to survive in the water. (<u>Id.</u>) In addition, the ISR program maintains safety protocols to keep children safe during

-2-

instruction and provides a "BUDS" Record Sheet allowing parents to monitor children's bodily functions, diet, and sleep in order to evaluate physical responses to the ISR program.

In a five-week course, ISR trains and certifies instructors. ISR-certified instructors teach survival skills to infants in private lessons, ten minutes a day, five days a week for three to four weeks. Instructors receive a videotape entitled "Prompts and Procedures," which illustrates how to use behavioral conditioning in teaching infants and covers other water-safety issues. ISR's program also includes the ISR Master Instructor System, in which individuals become certified as Master Instructors to train other potential ISR instructors.

Dr. Barnett has written various books detailing some of the techniques and methods used in ISR's aquatic-survival program, including <u>Precision Strokes for Little Folks</u>, published in 1974. More than ten years later, he wrote, but never published, a manual entitled <u>The Science of Infant Swimming</u>, which is used to help instructors understand "the psychology of infants and young children, their anatomy, and the physics involved as their small bodies move through the water." (Appellants' Br. at 5.) In 1989, ISR began publishing the "Parent Resource Book," now in its ninth edition, an educational book distributed to parents regarding the dangers of infant drowning and the theory and processes used by ISR.

Judy Heumann, Ann Shidler, and Alison Geerdes, defendants in the instant case, are former ISR instructors who left the company in early 2000. ISR trained Heumann as an instructor and Master Instructor in 1984 and 1987, respectively. Shidler was trained as an instructor in 1990, and as a Master Instructor in 1993, and Geerdes was trained as an ISR instructor and worked for less than a year before leaving ISR. She is not a Master Instructor. Defendants paid fees ranging from $5,000 to $10,000 for the instruction.

While employed by ISR, Heumann, Shidler, and Geerdes each signed a "Non-disclosure and Confidentiality Agreement" and a license agreement containing a further "Confidentiality of Information" provision as well as a "Covenant Not to Compete."[1] (1 Appellants' App. at 60, 77–80, 81–85.) Notwithstanding these agreements, on leaving ISR in 2000, the three former employees started Infant Aquatic Survival ("IAS"), a new company devoted to teaching infant and child swimming in Colorado. It is this conduct that is the subject of this litigation. Defendants' program is allegedly similar to the ISR program in that it utilizes the same "swim, float, swim" method, implements some of the same safety protocols, uses a Daily Health Data Sheet similar to the BUDS sheet, uses a comparable registration form, and distributes a comparable parent resource book to parents of

---

[1] Beginning in 1986, ISR required its instructors to sign license agreements every two years.

children enrolled in the IAS program. It is uncontested that defendant Shidler's husband sought to reserve the names Harvey Barnett, Inc. and Infant Swimming Research, Inc. with the Colorado Secretary of State. On more than one occasion, defendants falsely advertised that their program, IAS, had been in business since 1990.

ISR filed in district court a complaint against the defendants, alleging state-law claims of misappropriation of trade secrets, breach of contract, and unjust enrichment, as well as unfair competition and deceptive trade practices under the CCPA, along with federal claims of trademark infringement and misleading trade practices under the Lanham Act. ISR then sought a preliminary injunction to prevent the defendants from teaching the ISR program to other instructors. Following an evidentiary hearing, the district court denied ISR's request for a preliminary injunction as to Heumann and Shidler.[2] Subsequently, the defendants moved for summary judgment, which was granted. In its ruling, the district court concluded that the ISR program was not a trade secret as a matter of law and dismissed ISR's misappropriation-of-trade-secrets claim. The district court further concluded that both the covenant not to compete and the confidentiality provision in the license agreement were not enforceable, and dismissed ISR's breach-of-

---

[2] Judgment as a matter of law favoring Geerdes was granted on the basis that she was not trained as a Master Instructor.

contract claim. As to ISR's remaining claims—trademark infringement and misleading trade practices under the Lanham Act, and violations of the CCPA—the court concluded that, because ISR failed to advance sufficient evidence on each element, those claims must be dismissed as well. ISR appeals the grant of summary judgment to defendants.[3]

## II

We review the grant of summary judgment de novo, applying the same legal standard used by the district court. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In our review, we examine the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). "Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim." Id. Once the movant carries this burden, the nonmoving party must "bring forward specific facts showing a genuine

_____

[3] ISR did not appeal the district court's denial of its request for a preliminary injunction.

issue for trial as to those dispositive matters for which he or she carries the burden of proof." Id. (quotation omitted). An issue of material fact is genuine if the nonmovant presents facts that would allow a reasonable jury to find in favor of the nonmovant. Id.

**A**

In evaluating the district court's decision regarding ISR's trade-secrets claim, we look to Colorado law. Colorado has adopted the Uniform Trade Secrets Act, which defines a trade secret as "any scientific or technical information, design, process, procedure, formula, [or] improvement . . . which is secret and of value." Colo. Rev. Stat. § 7-74-102. In order "[t]o be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Id. Trade-secret status is a question of fact. Colo. Supply Co. v. Stewart, 797 P.2d 1303, 1306 (Colo. Ct. App. 1990); see also Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp., 28 F.3d 1042, 1045 (10th Cir. 1994) (holding that in this context "doubts as to existence of triable issue of fact . . . must be resolved in favor of the existence of triable issues").

Factors considered in determining whether a trade secret exists include:

(1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected

-7-

and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

Colo. Supply Co., 797 P.2d at 1306. In Rivendell, we held, consistent with Colorado law, that information can be a trade secret notwithstanding the fact that some of its components are well-known. 28 F.3d at 1045. "[A] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Id. (quotation omitted).

In arriving at its conclusion that the ISR program is not a trade secret as a matter of law, the district court determined that (1) "[v]ariations of the swim, float, swim method are known both inside and outside the children's aquatic business," (2) ISR did not take precautions to guard the secrecy of its information "until at least 1996, after hundreds of instructors had been trained and thousands of students taught," (3) "[p]arents and bystanders were allowed to watch and videotape lessons," and (4) "a variation on ISR's methods could be created through a perusal of commercially available child psychology, child health, and swimming instruction

books."[4]  Barnett v. Shidler, No. 00-B-731, slip op. at 5 (D. Colo. Jan. 4, 2002).

Ultimately, the court found that "ISR allowed its program to become part of the

public domain before seeking protection . . . [and] the Prompts and Procedures,

based on principles of behavioral conditioning, was already in use to teach children

swim, float, swim throughout the nation" and thus "as a matter of law . . . ISR has

no protectable trade secret."  Id. at 5–6.

Our review leads us to conclude that the district court improperly looked at

components of the ISR program in isolation, rather than as a whole, in determining

that ISR does not possess a trade secret.  This runs afoul of the analytical approach

set forth in Rivendell.  28 F.3d at 1045–46 (concluding that the district court

improperly examined the separate elements of an alleged trade secret rather than

the combination of elements).  ISR's position is that the ISR program, as a whole,

is a trade secret.[5]  (See Appellants' Br. at 15 ("The unified process, design and

---

[4]  ISR contends that the district court improperly relied on library books
and information downloaded from the internet.  ISR suggests these books and
materials are hearsay and should not have been considered when ruling on
defendants' motion for summary judgment.  ISR's hearsay argument lacks merit.
As correctly explained by the defendants in their reply brief, these pieces of
evidence were not admitted for the truth of the matter asserted therein, but rather
for the very fact of their existence.

[5]  Consistent with this theory, ISR asserts that none of its publications,
including Precision Strokes for Little Folks, discloses trade secrets.  Although its
publications provide general information about the techniques used by ISR and
the psychological foundations for those techniques, ISR's position is that the ISR
program, as a whole, is a trade secret and cannot be learned from its publications.

operation of the ISR Program, in unique combination, affords a competitive advantage and is a protectable secret.").) In failing to follow our holding in Rivendell—that a trade secret can exist in a combination of characteristics, each of which, considered separately, is in the public domain, but, taken together, may yield a competitive advantage that results in a protectable trade secret—the district court applied an inappropriate standard. We do not suggest that had the district court merely stated that it was also considering its findings in the aggregate, that would have been sufficient. Rivendell's requirement of analysis in the aggregate is more than a formality. It is a substantive component of trade-secret analysis integral to a court's ultimate conclusion regarding the existence of material facts for trial. On our review of the record, we conclude that a Rivendell analysis sets in relief numerous genuine issues of material fact precluding summary judgment.

In support of the first and second factors used by Colorado courts to determine the existence of a trade secret—the extent to which the information is known outside the business and to those inside the business—ISR submitted four affidavits attesting to the uniqueness of the ISR program. First, Tom Werts, an aquatic safety consultant with over thirty years of experience, including a position as the National Director of Water Safety for the American Red Cross, stated in his affidavit: "The ISR program and the techniques used by its instructors are unique. They are not taught by other aquatic organizations. The ISR program is a

behavioral approach to pediatric drowning prevention." (1 Appellants' App. at 71.) Second, in his affidavit, Dr. Barnett stated that the ISR program "is not simply teaching children to swim. The ISR Program is a unique and specially designed behavioral approach to pediatric drowning prevention."[6] (4 id. at 1455.) Third, Lisa Grether, a current ISR instructor, averred that the ISR program uses trade secrets and is unique. Finally, Dr. David Carr, who, in his role as an advisory board member for the State of Florida, had the opportunity to evaluate various infant-swimming programs for certification in Florida, submitted an affidavit in which he claimed that "Dr. Barnett's program was the only program which offered a behavioral approach to pediatric drowning prevention" and that the ISR program is "unique unto itself" and "not capable of being copied simply by watching from poolside." (1 id. at 358–59.)

In further support of the first and second factors, ISR points to testimony from two current ISR instructors, Carol Gnam and Cindy Asay, who relayed repeated admissions by Shidler and Heumann regarding the uniqueness of the ISR program. ISR also elicited testimony from David Dubois, one of defendants'

_____

[6] Emphasizing the difference between standard swimming programs and the ISR program, Dr. Barnett points out that although the YMCA, American Medical Association, and American Academy of Pediatrics ("AAP") recommend not teaching children to swim until they are four years of age, the ISR program teaches infants as young as six months old how to survive in the water. (See 1 id. at 64.)

experts, stating that he knows of no other aquatic program whose specific goal is to certify instructors, in a five-week time frame, to teach infants and toddlers aquatic survival skills.[7]

In support of the third factor—the precautions taken by the holder of the trade secret to guard the secrecy of the information—ISR presented Dr. Barnett's affidavit, franchise agreements, and license agreements. In his affidavit, Dr. Barnett averred that "ISR has protected the confidentiality of all of the ISR research and materials since the 1970's by franchise agreements with confidentiality restrictions and later by the restrictions of the license agreements." (4 id. at 1455.) As for the franchise agreements, they contained a "Confidentiality of Information" provision providing that "[f]ranchisee shall not at any time or in any way divulge, disclose, or communicate to any person or organization in any manner whatsoever any information concerning any matters affecting or relating to the business of Franchisor." (3 Appellees' Supp. App. at 1158.) Moreover, license agreements, prior to 1996, contained a "Confidentiality of Information" provision stating:

---

[7] Dubois claimed that the only other program he was aware of that could train instructors to teach infants with the same results as ISR was a program run by Ginny Flahive. During her testimony, however, Flahive explained that in order to become an instructor under her program, in contrast to the ISR program, individuals must first spend one year teaching children age four and older.

> LICENSEE shall **not at any time or in any way divulge, disclose or communicate to any person or organization in any manner whatsoever any information concerning any matters affecting or relating to the business of LICENSOR**. . . . LICENSEE further agrees not to write for publication any article concerning Infant Swimming Research teaching and data techniques and theory, infant swimming or infant and young child aquatic activities and drowning accidents and . . . not to train or endeavor to train instructors or assistants in the same or similar methods or techniques without **SPECIFIC WRITTEN CONSENT FROM LICENSOR**. . . . Upon termination of this agreement, LICENSEE will surrender all documents pertaining to LICENSOR'S business, technique, advertising and trade secrets.

(1 Appellants' App. at 61.)   Beginning in 1996, the Confidentiality of Information section provided that "Licensee acknowledges that the materials contain trade secrets of Licensor and as such provide a competitive advantage." (1 id. at 74.)

Based on our review of the evidence, we conclude that ISR has raised genuine issues of material fact as to the contested factors.[8]  ISR submitted evidence that its program is unique in that it instructs individuals, in a five-week period, how to teach aquatic-survival skills to infants as young as six-months old.  ISR further submitted evidence showing that, through franchise agreements and license

---

[8]  The first three factors are the focus of this appeal. Assuredly, however, we are satisfied that ISR submitted sufficient evidence in support of the final three factors as well.  In support of the fourth factor—the value to the holder of possessing trade-secret information—ISR cites the affidavits of Dr. Barnett, Dr. Carr, and Dr. Werts, in which they attest to the competitive advantages of the ISR program.  Finally, as to the fifth and sixth factors—the amount of effort or money expended in developing the trade-secret information and the amount of time and expense it would take for others to duplicate the information—ISR produced evidence that Dr. Barnett spent his entire adult life developing the ISR program and evidence that no other infant swimming program compares.

-13-

agreements, it has taken precautions to guard the secrecy of its program.[9]  Factual

issues remain in regard to whether the nuanced ISR program is distinguishable from

standard infant-swimming programs and whether ISR took reasonable precautions

to guard the secrecy of its alleged trade-secret program.  Indulging all inferences in

favor of ISR, we hold that summary judgment is not appropriate on the question of

whether the ISR program, viewed comprehensively, is a trade secret.

**B**

We turn to the district court's dismissal of the contract claims.[10]  Each

defendant signed a "Nondisclosure and Confidentiality Agreement," which required

---

[9]  Defendants' arguments that ISR did not protect the confidentiality of the ISR program until 1996 are not dispositive at this summary judgment stage. Defendants first contend that Dr. Barnett conceded at the preliminary-injunction hearing that ISR did not possess a trade secret until 1996 and that information available to the public before 1996 is identical to information after 1996.  We have reviewed the record and are not persuaded that Dr. Barnett has conceded the case.  At a minimum, there is conflicting evidence on this question.  Defendants also ask us to consider the fact that the franchise agreements did not expressly mention trade secrets and that the license agreements did not expressly refer to the ISR program as a trade secret until 1996.  A rational jury could consider the franchise agreements, as well as the license agreements, in determining whether ISR took reasonable precautions to guard the secrecy of the ISR program.  In any event, the question of whether the ISR program became a protectable trade secret after 1996 is for the trier of fact.

[10]  The district court also dismissed ISR's unjust-enrichment claim because, among other reasons, ISR failed to state that claim in the Pre-Trial Order.  As noted by the district court, claims in the Pre-Trial Order supercede claims in the complaint.  See Fed. R. Civ. P. 16(e).  Because ISR did not properly raise its claim below, we will not engage in this "highly fact-intensive" inquiry here. Dudding v. Norton Frickey & Assocs., 11 P.3d 441, 445 (Colo. 2000) (en banc).

them to hold ISR's confidential information in secrecy and use it solely for the purposes contemplated in the parties' license agreements. As discussed above, the license agreements contain (1) a covenant not to compete and (2) a confidentiality provision.

1. Covenant Not to Compete

The covenant not to compete provides that:

Licensee shall not, during the terms of this Agreement and for 2 (two) years immediately following the termination of this Agreement, regardless of who initiates the termination, engage directly or indirectly in the teaching of infants or young children to swim or engage in the business or training other individuals for the purpose of teaching infants or young children to swim, other than pursuant to the terms of this Agreement. . . . This Covenant Not to Compete shall be effective within a five hundred (500) mile radius from the present site of the business address of Licensee. This Covenant applies to self-employment or employment on behalf of any other person, firm, corporation, partnership or other business organization.

(1 Appellants' App. at 61–62.) Under Colorado law, covenants not to compete are void, save under limited circumstances. Colo. Rev. Stat. § 8-2-113(2). One exception protects "[a]ny contract for the protection of trade secrets." Id. § 8-2-113(2)(b). "For a covenant not to compete to fit within the trade secret exception to § 8-2-113(2), the purpose of the covenant must be the protection of trade secrets, and the covenant must be reasonably limited in scope to the protection of those trade secrets." Gold Messenger, Inc. v. McGuay, 937 P.2d 907, 910 (Colo. Ct. App. 1997). Having concluded that the ISR program was not a trade secret as a matter of law, the district court determined that the covenant not to compete was

necessarily void under Colorado law.  This being the primary basis of the district court's rationale, and given our conclusion that genuine issues of material fact remain on ISR's trade-secrets claim, it follows that this breach-of-contract claim must go forward as well.[11]

2. <u>Confidentiality provision</u>

Contained in the license agreements signed by defendants after 1996, the confidentiality provision provides:

> The research and printed materials provided by Dr. Harvey Barnett, Harvey Barnett, Inc. and Infant Swimming Research, Inc., which pertain to the education of infants and children in aquatic survival and swimming techniques, are unique intellectual properties entitled to protection as such at law.  **Licensee shall not at any time or in any way during the term of this Agreement or after its termination, divulge, disclose or communicate to any person or organization in any manner whatsoever any information concerning any matters affecting or relating to the business and trade secrets of Licensor**. . . . Licensee agrees not to train or not to endeavor to train instructors or assistants in the same or similar methods without **SPECIFIC WRITTEN CONSENT FROM LICENSOR**. . . . Licensee acknowledges that the materials contain trade secrets of Licensor and as such provide a competitive advantage.  ANY BREACH OF THE TERMS OF THIS PARAGRAPH SHALL BE A MATERIAL BREACH OF THIS AGREEMENT AND SHALL RESULT IN IMMEDIATE REVOCATION OF THE LICENSE AND TERMINATION OF THIS AGREEMENT. . . . Licensee will not disclose to another person any of the methods, techniques, trade secrets or systems used by Licensor in business.  Further, at any time following termination of this Agreement, use

---

[11] Defendants argue that the covenants not to compete are unreasonable as to the scope of conduct the covenants purport to prohibit.  Because the district court did not address this argument, we decline to do so for the first time on appeal and remand for that purpose.  <u>See</u> <u>R. Eric Peterson Constr. Co. v. Quintek, Inc.</u>, 951 F.2d 1175, 1182 (10th Cir. 1991).

of Licensor's trade secrets, under any other name or organization constitutes unfair competition due to the distinctive results of Licensor's techniques. **Terms of this and all paragraphs are permanent**.

(1 Appellants' App. at 74.)  In dismissing ISR's claim relating to this provision, the district court concluded that, even if this provision created an enforceable duty on defendants not to disclose confidential information not rising to the level of a trade secret, the provision was a disguised restrictive covenant that was unenforceable as vague and overly broad.

In Mai Basic Four, Inc. v. Basis, Inc., 880 F.2d 286 (10th Cir. 1989), we held that the confidentiality and non-disclosure agreements at issue could not be characterized as restrictive covenants because they "serve entirely different purposes than do agreements not to compete and must be analyzed on the basis of those distinct purposes alone."[12]  Id. at 288.  We noted that the Mai Basic defendants remained "free to work for whomever they wish, wherever they wish, and at whatever they wish, subject only to the prohibition against misusing plaintiff's proprietary information and the requirement that defendants assign to plaintiff any work product relating to plaintiff's business that was developed by defendants while they were employed by plaintiff or shortly thereafter."  Id.

---

[12]  Although Mai Basic involved a contract dispute in New Mexico, its rationale is equally applicable here.

Defendants distinguish Mai Basic on the ground that the present confidentiality provision prevents licensees from divulging "any information concerning any matters affecting or relating to the business and trade secrets of Licensor," thus preventing competition regardless of whether it involves the use of trade-secret information. (Appellees' Br. at 25.) We disagree with the defendants' proposed distinction. As in Mai Basic, the pertinent provision preserves "the valuable confidential information plaintiff necessarily had to disclose to the individual defendants during the course of their employment." 800 F.2d at 288. This provision is different from a blanket covenant not to compete in that it does not purport to prevent defendants from teaching swimming to infants using widely known techniques. As indicated by its title, the purpose of the confidentiality provision is to prevent defendants from divulging confidential information; it prevents defendants from teaching infants utilizing the allegedly confidential techniques possessed by ISR.

We conclude the district court erred in determining that the confidentiality provision is a disguised restrictive covenant. Thus, we reverse the district court's decision on this breach-of-contract claim as well. On remand, the trier of fact should consider whether the ISR program contained confidential information

protected under this provision.[13]  See Mulei v. Jet Courier Serv., Inc., 739 P.2d 889,

892 (Colo. Ct. App. 1987) (noting that "confidential information acquired during

the course of employment may be protected" and "[t]he determination of what

constitutes confidential information is a question for the trier of fact" (quotation

omitted)), rev'd on other grounds, 771 P.2d 486 (Colo. 1989) (en banc).

## C

ISR's remaining claims address misleading trade practices in violation of the

Lanham Act, 15 U.S.C. § 1125,[14] as well as unfair competition and deceptive trade

practices in violation of the CCPA, Colo. Rev. Stat. § 6-1-105.[15]  These claims are

---

[13]  We note that the license agreements contain a severability clause.  In granting summary judgment in favor of the defendants, the district court did not address the question of severability.  Should the district court ultimately conclude that certain provisions of the license agreements are unenforceable, severability is an option.

[14]  Pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(A),
> Any person who, on, or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[15]  Pursuant to the CCPA,
> (1)   A person engages in a deceptive trade practice when, in the

(continued...)

-19-

predicated on the defendants' allegedly false and misleading advertisements to the public.  In dismissing these claims, the district court found that summary judgment was appropriate because there was (1) no evidence of any resulting confusion or mistake and (2) no evidence of damages.  See Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1252 (10th Cir. 1999) (elements of the Lanham Act); Hall v. Walter, 969 P.2d 224 (Colo. 1998) (en banc) (elements of the CCPA).

ISR's disagreement with the district court's decision that ISR failed to advance evidence of likelihood of confusion is based entirely on a quote from our decision in Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 941 (10th Cir. 1983) (quotation omitted):  "Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of a likelihood of confusion."  ISR is correct that a party need not set forth evidence of actual confusion in order to prevail in a trademark-infringement action.  See id.  In

---

[15](...continued)
course of such person's business, vocation, or occupation, such person:
(a)    Knowingly passes off goods, services, or property as those of another;
(b)    Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;
(c)    Knowingly makes a false representation as to affiliation, connection, or association with or certification by another . . .
Colo. Rev. Stat. § 6-1-105.

devoting merely a single sentence in its opening brief to this issue, only to quote Beer Nuts, however, ISR has failed to advance evidence on whether there was so much as a likelihood of confusion resulting from the defendants' false representations—a showing necessary to prevail on its Lanham Act misleading-trade-practices claim.[16]

As for injury—a further required element under the Lanham Act as well as the CCPA—ISR fails on two counts: it does not develop its argument and it advances no evidence whatsoever of loss of business or loss of profits. It merely makes an argument about the appropriate measure of damages.[17] In the absence of an adequately developed argument, and in the absence of any evidence of injury, we must affirm the district court. "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Elsken v. Network Multi-Family Sec. Corp., 49 F.3d 1470, 1476 (10th Cir. 1995). We conclude that ISR has failed to show a genuine issue for trial as to whether it suffered an injury in fact as a result of the defendants' misleading advertisements.

---

[16] We have held that de minimus evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion in a trademark-infringement claim. See King of the Mountain Sports, Inc. v. Chrylser Corp., 185 F.3d 1084, 1092 (10th Cir. 1999).

[17] In support of its position, ISR contends that the parties agreed to liquidated damages. That the parties agreed to liquidated damages in the event of a breach of the license agreement does not create a genuine issue of material fact for trial as to whether the defendants, through their misleading advertisements, caused the requisite injury under the Lanham Act and CCPA.

See, e.g., Hall, 969 P.2d at 235 (holding that a CCPA plaintiff "must be able to show that the defendant's actions in violation of the CCPA caused the plaintiff's injury" (emphasis added)). We affirm the district court on these remaining claims.[18]

## III

In sum, we **REVERSE** the district court's decision granting summary judgment in favor of defendants on ISR's claim of misappropriation of trade secrets, and on its claim of breach of contract, and we **REMAND** for further proceedings consistent with this opinion.[19] We **AFFIRM** the district court's decision in all other respects.

---

[18] In its complaint, ISR also alleged trademark infringement in violation of 15 U.S.C. § 1114(1)(a). ISR's trademark infringement claim is based on the defendants' use of the phrase "Infant Aquatic Survival" as the name of its program. In dismissing this claim, the district court found that defendants' use of the phrase "Infant Aquatic Survival" was merely descriptive and used in good faith to describe its services, which is a defense under the relevant statute. See 15 U.S.C. § 1115(b)(4) (listing as a defense to a charge of trademark infringement that the "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party"). ISR has not challenged this decision by the district court on appeal and thus we affirm on this ground the district court's ruling.

[19] We do so notwithstanding appellants' counsel's failure to meet basic standards relating to the record on appeal. Appellants inexcusably failed to include in the record, among other things, the complaint and defendants' motion for summary judgment. See 10th Cir. R. 10.3(C). In many instances, appellants' record-designation deficiencies were bailed out by the appellees themselves.