**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HARVEY BARNETT, INC., a Florida
corporation; INFANT SWIMMING
RESEARCH, INC., a Florida
corporation,

      Plaintiffs-Appellants/Cross-
      Appellees,

v.

ANN SHIDLER, d/b/a Infant Aquatic
Survival; ALISON GEERDES, d/b/a
Infant Aquatic Survival,

      Defendants-Appellees,

and

JUDY HEUMANN, d/b/a Infant
Aquatic Survival,

      Defendant-Appellee/Cross-
      Appellant.

Nos. 04-1221 & 04-1222

(D.C. No. 00-F-731 (OES))
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY, BRISCOE,** and **LUCERO**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Harvey Barnett, Inc. and Infant Swimming Research, Inc. (collectively "ISR") filed a complaint against former employees Judy Heumann, Ann Shidler, and Alison Geerdes, asserting, among other claims, that the employees misappropriated ISR's trade secrets and breached a license agreement which contained a covenant not to compete and a confidentiality provision. In a prior appeal, this court affirmed in part, and reversed in part, the district court's grant of summary judgment in favor of Heumann, Shidler, and Geerdes, and remanded the case. Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125 (10th Cir. 2003) (hereinafter "Harvey I"). Following a six-day trial on remand, a jury found that Heumann and Shidler breached the license agreement's confidentiality provision, but found that they neither misappropriated ISR's trade secrets, nor breached the license agreement's covenant not to compete. The jury absolved Geerdes of any liability. The district court subsequently awarded ISR and Geerdes attorney fees and costs under the prevailing party provision of the license agreement, and granted ISR a permanent injunction against Heumann and Shidler.

On appeal, ISR challenges the district court's calculation of its attorney fees, Geerdes's status as a prevailing party entitled to attorney fees under the license agreement, as well as the scope of the district court's permanent injunction against Heumann and Shidler. Heumann cross appeals, arguing, in essence, that the district court should have dismissed ISR's breach of

confidentiality claim in light of the jury's finding that she did not misappropriate ISR's trade secrets. Shidler has not cross-appealed and does not participate in this appeal in any way.[2] Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM the jury's verdict against Heumann, the district court's decision to award attorney fees to Geerdes as a prevailing party under the license agreement, and the scope of district court's permanent injunction against Heumann and Shidler. We REVERSE the district court's award of attorney fees to ISR and REMAND for further proceedings consistent with this opinion.

## I.

As the parties are well aware of the facts of the case, we will not repeat them here in any detail.[3] In April 2000, ISR filed a complaint against Heumann, Shidler, and Geerdes, former ISR swimming instructors trained by ISR to teach the ISR swimming program, a collection of methods, procedures, and techniques for teaching infants and young children aquatic survival and related aquatic skills. ISR sought damages and injunctive relief based on allegations that the three

---

[2] Heumann and Geerdes are represented by the same attorneys on appeal as represented them before the district court. Shidler was also represented by said attorneys until January 4, 2005, when we granted Shidler's attorneys' motion to withdraw as Shidler's counsel. The record indicates that since that time no other attorney has entered an appearance or filed a brief on her behalf.

[3] Anyone wanting additional factual background is referred to Harvey I, as well as the district court's decision denying ISR's motion for a preliminary injunction, Harvey Barnett, Inc. v. Shidler, 143 F. Supp. 2d 1247 (D. Colo. 2001).

former employees started a new business attempting to teach the ISR program without ISR's authorization. Specifically, ISR's amended complaint raised state law claims of misappropriation of trade secrets, breach of contract, and unjust enrichment; claims for unfair competition and deceptive trade practices under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, et. seq.; and federal claims for trademark infringement and misleading trade practices under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. In response to ISR's complaint, Heumann, Shidler, and Geerdes filed several counterclaims.

In January 2002, the district court granted summary judgment in favor of Heumann, Shidler, and Geerdes on all of ISR's claims against them. Shortly thereafter, the district court granted Heumann, Shidler, and Geerdes's joint motion to voluntarily dismiss their counterclaims against ISR. ISR appealed the district court's grant of summary judgment, and this court affirmed the summary judgment entered in favor of Heumann, Shilder, and Geerdes on ISR's unjust enrichment claim and its claims under the CCPA and Lanham Act. Harvey I, 338 F.3d at 1136. However, we reversed the district court's grant of summary judgment on ISR's misappropriation of trade secret claims, as well as on its breach of contract claims based on the parties' license agreement which contained a covenant not to compete and a confidentiality provision. Id.

After a six-day jury trial on the remanded claims, a jury returned a special verdict finding that: (1) ISR possessed information that constituted a trade secret;

-4-

(2) none of the former employees misappropriated ISR's trade secrets; (3) Heumann and Shidler breached the confidentiality provision of the license agreement; and (4) Shidler and Heumann were each liable for $50,000 in damages based on a liquidated damages provision in the license agreement.[4]

The parties filed several post-trial motions. As to the jury's verdict against Heumann and Shidler on ISR's breach of confidentiality claim, Heumann and Shidler filed a joint motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59. ISR requested attorney fees and costs as a prevailing party under the license agreement, as well as the entry of a permanent injunction against Shidler, Heumann, and Geerdes. Geerdes requested attorney fees and costs as a prevailing party under the license agreement.

The district court entered a "Global Order" to resolve all of the pending post-trial motions. Relevant to this appeal, the district court rejected Heumann and Shidler's contention that ISR had presented no evidence that it possessed confidential information separate and apart from its alleged trade secret information. The district court also rejected Heumann and Shidler's contention that ISR had presented no evidence to demonstrate that the two had disclosed

---

[4] The verdict form instructed the jury to not answer whether Heumann, Shidler, and Geerdes breached the covenant not to compete if the jury determined the former ISR employees did not misappropriate ISR's trade secrets.

confidential information of any kind. As for the attorney fees and costs requested by ISR and Geerdes, the district court reduced ISR's fees by one-half because it succeeded on only one of its two breach of contract claims, and by an additional one-third because of its lack of success on its claims against Geerdes. Similarly, the district court reduced Geerdes's fees by two-thirds because her counsel performed work for the benefit of Heumann and Shidler as well, and they did not prevail at trial.[5] Lastly, the district court granted ISR's request for a permanent injunction against Heumann and Shidler, but not to the full extent sought by ISR.

II.

A. Denial of Judgment as a Matter of Law

We first address Heumann's challenges to the district court's denial of her Rule 50 motion for judgment as a matter of law. Heumann contends that ISR offered no evidence that she disclosed confidential information that existed separate and apart from ISR's trade secret information. According to Heumann, once the jury found that she did not misappropriate ISR's trade secrets, the district court should have dismissed ISR's breach of contract claim based on the confidentiality provision of the license agreement. Heumann argues that, in any event, ISR failed to present evidence that she disclosed confidential information of any kind.

---

[5]     Geerdes did not file a cross-appeal to challenge her award of attorney fees.

"We review the district court's denial [of a] motion for judgment as a matter of law de novo, applying the same legal standard as the district court." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000) (citing Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999)).  A party is entitled to judgment as a matter of law only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (internal quotations omitted).  In reviewing the record, "we will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Id.  "Judgment as a matter of law . . . is appropriate only if there is no legally sufficient evidentiary basis . . . [for a claim] under the controlling law." Id. (internal quotations omitted).  "We consider the evidence, and any inferences drawn therefrom . . . in favor of . . . the non-moving party." Id.

We conclude that, based on the evidence at trial, a reasonable jury could find that Heumann failed to comply with the license agreement's confidentiality provision.  To establish that Heumann violated the license agreement's confidentiality provision, the jury instructions required ISR to prove:  (1) ISR's program contained confidential information protected under the confidentiality provision of the license agreement; and (2) Heumann failed to comply with the confidentiality provision of the license agreement.  Instr. No. 30, App. at 122.  As to the first element, ISR's "Non-Disclosure and Confidentiality Agreement,"

-7-

signed by Heumann on November 1, 1998, provides evidence that Heumann acknowledged that she received confidential information protected by the license agreement:

> Whereas, Judy Heumann ("Licensee") has received certain confidential information of Harvey Barnett, Inc. ("Barnett") . . . relating to specialized methods, procedures and techniques for teaching infants and children water survival, swimming and associated aquatic skills and Licensee specifically acknowledges that said confidential information was received, used and has been maintained in confidence pursuant to the terms of a license agreement between Barnett and Licensee[.]

App. at 36.

As to the second element, the confidentiality provision in the license agreement prohibited Heumann from: (1) "divulg[ing], disclos[ing] or communicat[ing] to any person or organization in any manner whatsoever any information concerning any matters affecting or relating to the business and trade secrets of [ISR]"; (2) "writ[ing] for publication any article concerning Infant Swimming Research, teaching, data, techniques, theory or trade secrets"; (3) "train[ing] . . . or endeavor[ing] to train instructors or assistants in the same or similar methods without [ISR's written consent]"; (4) copying or reproducing ISR's documents or training videos "in whole or in part at any time"; (5) "disclos[ing] to another person any of the methods, techniques, trade secrets or systems used by [ISR] in business"; and (6) upon termination, retaining any "materials [regarding ISR's] business, techniques, advertising and trade secrets."

Id. at 42. Upon review of the evidence presented, we conclude that, at a minimum, a reasonable jury could have found that Heumann violated those portions of the confidentiality provision which prohibited her from disclosing or communicating ISR's methods and techniques that it used in its business, and from training other instructors using similar methods without ISR's consent.

The trial record establishes that, prior to joining ISR as an instructor in 1984, Heumann had no experience teaching infants and young children aquatic survival skills. Heumann herself testified that she went to ISR to become not only a better instructor, but because she found ISR's emphasis on survival and use of stimulus control to be unique compared to other swim programs. Heumann became a master instructor in 1987 so that she could teach other potential ISR instructors. By January 2000, Heumann, along with other former ISR instructors, formed Infant Aquatic Survival to teach "swimming with a focus on survival." Supp. App. at 529. Heumann acknowledged that over a year after she left ISR, the only changes she made to the ISR program were that she allowed a more relaxed environment, she involved parents more, she used more toys, and she conducted some semi-private lessons. Further, Heumann testified that she had signed three instructors to work with infants under the age of three-and-a-half and required those instructors to sign an agreement similar to ISR's license agreement before providing them with her "specialized techniques and materials for training instructors." Id. at 531. Finally, Heumann admitted that

-9-

since she left ISR, she had not enrolled in any programs to receive additional training to teach children to survive in the water or to train another person how to teach children to survive in the water.

In sum, the record, viewed in the light most favorable to ISR, demonstrates that Heumann signed a "Non-Disclosure and Confidentiality Agreement" in which she acknowledged receiving confidential information protected by the license agreement. Heumann had no background in teaching infants to survive in water before joining ISR, and she received little or no training in that area since leaving ISR. When Heumann formed Infant Aquatic Survival, she did not significantly depart from the techniques and methods she learned during her sixteen years at ISR. She also trained other instructors to teach infants to survive in water, and required those instructors to keep confidential the information she provided them. This evidence is more than ample to sustain the jury's verdict against Heumann.

Moreover, we reject Heumann's underlying premise that the jury's finding that she did not misappropriate ISR's trade secrets compelled a verdict that she did not breach the confidentiality provision of the license agreement. ISR's claim for breach of the confidentiality provision is not merely a contractual restatement of ISR's statutory misappropriation of trade secrets claim. The two

claims are independent: they each contain their own unique elements which could be established by different evidence.[6]

Under the jury instructions, for ISR to establish a claim for misappropriation of trade secrets, ISR had the burden to prove:

> (1) [t]rade secrets existed; (2) [Heumann] acquired those trade secrets from [ISR]; (3) [Heumann] used the secret information; and (4) [ISR] suffered harm as a direct and proximate result of [Heumann's] use or disclosure of [ISR's] trade secret or [that Heumann] gained from such use or disclosure.

Instr. No. 16, App. 108. The instructions defined "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Instr. No. 17, App. at 109. The instructions further informed the jury that a "trade secret" could "exist in a combination of characteristics and components each of which, by

---

[6] We note that even if ISR's cause of action for breach of contract was based on misappropriation of trade secrets, it would not be superceded by ISR's misappropriation of trade secrets claim under the Colorado Uniform Trade Secrets Act. Colorado Revised Statutes § 7-74-108 (2005) provides:

> (1) Except as provided in subsection (2) of this section, this article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
> (2) This article does not affect: (a) Contractual remedies, whether or not based on misappropriation of a trade secret . . . .

-11-

itself, is in the public domain, but the unified process, design and operation which, in unique combination, affords a competitive advantage and is a protectable secret." Instr. No. 19, App. at 111. In fact, ISR's position throughout this litigation has been that "'[t]he unified process, design and operation of the ISR Program, in unique combination, affords a competitive advantage and is a protectable [trade] secret.'" Harvey I, 338 F.3d at 1130 (citation omitted).

The jury specifically found that ISR possessed trade secrets, but concluded that Heumann did not misappropriate those secrets. This finding did not require the jury to also conclude that Heumann complied with the license agreement's confidentiality provision. The plain language of the confidentiality provision goes beyond the protection and disclosure of trade secrets. The provision protects several categories of information, including ISR's trade secrets, methods, systems, techniques, materials, business secrets, theory, data, documents, training videos, and advertising. In our view, for instance, a reasonable jury could conclude that Heumann did not misappropriate ISR's trade secrets, i.e., the ISR program as an integrated whole, and at the same time conclude that Heumann agreed to keep confidential certain techniques and methods of the ISR program, and that she violated her agreement when she trained or endeavored to train other instructors using those confidential techniques and methods.

## B.  Jury Verdict Form

Building on her prior arguments, Heumann contends that the verdict form improperly allowed the jury to reach ISR's breach of confidentiality claim after the jury found that Heumann did not misappropriate ISR's trade secrets. Heumann makes two arguments on this point.[7]  Heumann first asserts that the license agreement's confidentiality provision protected only trade secrets.  Based on that premise, Heumann reasons that once the jury concluded that she did not misappropriate ISR's trade secrets, it was required to find that she did not breach the confidentiality provision.  We conclude that Heumann's argument lacks merit.  As previously stated, the confidentiality provision was broader in scope and prohibited more than the mere disclosure of trade secrets.

Next, Heumann contends that, unless she owed a fiduciary duty to ISR, she was not obligated to keep any of ISR's information confidential if it failed to rise to the level of a trade secret.[8]  Applying this line of argument, Heumann asserts that she did not owe a fiduciary duty to ISR because she was an independent contractor, and therefore she was not required "to keep confidential any information that was not actually a trade secret." Aplt. Br. at 29.  As a result,

----

[7]     Heumann and Shilder asserted these arguments in their joint motion for a new trial pursuant to Fed. R. Civ. P. 59.

[8]     Heumann teases this legal theory out of our prior decision in Kodekey Electronics, Inc. v. Mechanex Corporation, 486 F.2d 449, 454 n.4 (10th Cir. 1973).  Heumann's argument, however, may be rejected without revisiting Kodekey.

Heumann concludes that once the jury found that she did not misappropriate ISR's trade secrets, its task was completed and it should not have considered whether she breached her confidentiality obligations under the license agreement.

Heumann's theory, although creative, fails. For argument's sake, we assume that Heumann was not obligated to protect ISR's non-trade secret confidential information unless a fiduciary relationship existed between ISR and Heumann. We conclude, however, that Heumann, at a minimum, owed a fiduciary duty to ISR based on the terms of the agreements she signed with ISR.

Under Colorado law, although "employers do not generally owe fiduciary duties to employees," "an employee normally owes fiduciary duties to his employer." Combs v. Price Waterhouse Coopers, 382 F.3d 1196, 1200 n.2 (10th Cir. 2004) (citations omitted); see also Carpenter v. United States, 484 U.S. 19, 27 (1987) (noting that under the common law, "'even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment'") (citation omitted). It is true that the license agreement classifies Heumann as an independent contractor, not an employee. See App. at 41.[9] Nevertheless, Heumann signed

_____

[9]     Heumann relies solely on Bithell v. Western Care Corp., 762 P.2d 708, 714 (Colo. Ct. App. 1988) for the proposition that a plaintiff acting in the capacity of an independent contractor does not owe a fiduciary duty to a corporation. However, under the facts of Bithell, the case stands only for the proposition that a corporation does not owe a fiduciary duty to an independent contractor.

the "Non-Disclosure and Confidentiality Agreement, in which she agreed to maintain ISR's confidential information "in confidence" pursuant to the terms of the license agreement that she also signed. App. at 36. We conclude that these agreements provide sufficient evidence that a fiduciary relationship existed between Heumann and ISR. See Turkey Creek, LLC v. Rosania, 953 P.2d 1306, 1312 (Colo. Ct. App. 1998) ("A fiduciary duty arises between parties through a relationship of trust, confidence, and reliance. Such duty arises when one party has a high degree of control over the property or subject matter of another . . . ."). Accordingly, Heumann is bound by the agreements she signed.

### C.  Jury Instructions

Heumann contends that the district court provided two improper jury instructions. "We review the court's refusal to give a particular instruction for abuse of discretion." Coletti v. Cudd Pressure Control, 165 F.3d 767, 771 (10th Cir. 1999) (citation omitted). "We do not determine whether instructions . . . are flawless." Phillips v. Duro-Last Roofing, Inc., 973 F.2d 869, 871 (10th Cir. 1992). "We review de novo whether, as a whole, the instructions . . . stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." Reed v. Landstar Ligon, 314 F.3d 447, 449-50 (10th Cir. 2002). "'So long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction' is not grounds for reversal." Coletti, 165 F.3d at 771 (citation omitted).

-15-

## 1. The Rivendell Instruction

Heumann argues the district court provided the jury with an incorrect statement of the law concerning the application of trade secret status to publicly known information. Specifically, Heumann contends that jury instruction number 19, based on this court's decision in Rivendell Forest Products v. Georgia-Pacific Corp., 28 F.3d 1042 (10th Cir. 1994), did not articulate the degree of specificity ISR was required to show regarding how a combination of publicly known information was a protectable trade secret. Heumann maintains that this error was fundamental because ISR's claims for misappropriation of trade secrets, breach of the covenant not to compete, and breach of the confidentiality provision all required the existence of trade secrets.

In Rivendell, we held:

> the doctrine has been established that a trade secret can include a system where the elements are in the public domain, but there has been accomplished an effective, successful and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage which is protected from misappropriation.

Id. at 1046. In Harvey I, we specifically relied on Rivendell to "conclude that the district court improperly looked at components of the ISR program in isolation, rather than as a whole, in determining that ISR does not possess a trade secret." 338 F.3d at 1130. Following our guidance, the district court gave an instruction based on Rivendell to supplement instruction number 17, which defined "trade secret," and instruction number 18, which listed relevant factors in determining

-16-

whether a trade secret exists. Instruction number 19, the "Rivendell instruction," stated:

> A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.

Instr. No. 19, App. at 111.

Heumann asserts that the district court's Rivendell instruction was an incorrect statement of the law because it failed to inform the jury of the degree of specificity a plaintiff is required to show before a combination of publicly available information can constitute a trade secret. We are not persuaded. It was not an abuse of discretion for the district court to refuse to instruct the jury regarding the level of specificity ISR must satisfy before it could establish that a unique combination of publicly available information constituted a trade secret. The district court's Rivendell instruction, standing alone, is an accurate statement of our prior precedent. The district court gave three instructions to assist the jury in determining whether ISR had trade secrets, and these instructions, as a whole, provided a fair and adequate guide on this difficult to define concept. Moreover, we note that after refusing to change the Rivendell instruction, the district court

told Heumann that she could make her point to the jury during closing arguments. Supp. App. at 571.[10]

## 2. The Mulei Instruction

Heumann also contends that the district court gave an improper instruction concerning the definition of confidential information. The challenged instruction, instruction number 31, states:

> Only confidential information acquired during the course of employment may be protected, not the general knowledge of a business operation. Information already known to competitors or readily ascertainable elsewhere cannot be protected as confidential.

Instr. No. 31, App. at 123. The district court proposed this instruction, taking the language directly from Mulei v. Jet Courier Service, Inc., 739 P.2d 889, 892 (Colo. Ct. App. 1987), rev'd on other grounds, 771 P.2d 486 (Colo. 1989) (en banc); see also Harvey I, 338 F.3d at 1134 (quoting Mulei for the proposition that "'confidential information acquired during the course of employment may be protected'").

Heumann argues, as she did before the district court, that the following sentence from Mulei should also have been provided to the jury in instruction number 31:

> Moreover, the general ability and know-how an employee brings into

---

[10] Although the record does not include Heumann's closing arguments, we note that Heumann fails to assert that she was prevented from presenting her argument to the jury.

-18-

employment, and the skill and experience acquired during it, are not the employer's property; the right to use and expand these powers remains the employee's.

739 P.2d at 893 (citations omitted). Heumann asserts that this additional language was necessary for the jury to understand that she had certain rights in the skills and experiences which she possessed both before her employment with ISR, as well as those she gained during her employment with ISR.

We are not persuaded that Heumann's proposed third sentence from Mulei would have significantly altered the substance of the instructions given by the district court. Instruction number 31, as given, is an accurate statement of Colorado law and was sufficient to guide the jury's understanding of the nature of confidential information. The district court did not abuse its discretion in refusing to include the additional language from Mulei.

### D. Attorney Fees

ISR challenges the district court's ruling that Geerdes was a prevailing party against ISR for purposes of an award of attorney fees under the license agreement, as well as the district court's decision to reduce attorney fees it requested under the prevailing party provision of the license agreement.

"We review the district court's award of attorney fees for an abuse of discretion, but review the underlying legal analysis de novo." Hofer v. UNUM Life Ins. Co. of Am., 441 F.3d 872, 884 (10th Cir. 2006) (citation omitted). Where attorney fees are provided by contract, we have stated that the district

court's "role is to determine if the claimed fees are inequitable or unreasonable" and if so, the "court has discretion to deny or reduce the fee award." United States v. Western States Mech. Contractors, Inc., 834 F.2d 1533, 1549 (10th Cir. 1987).

## 1. Prevailing Party

ISR contends that the district court should not have awarded attorney fees and costs to Geerdes because ISR was the prevailing party against Geerdes under either the net judgment rule or a catalyst theory.[11] First, ISR emphasizes its successes from the litigation: the jury found that ISR possessed trade secrets; ISR obtained a judgment against Heumann and Shidler for $50,000 each on the breach of confidentiality claim; ISR obtained injunctive relief against Heumann and Shidler; and the district court granted Heumann, Shidler, and Geerdes's joint motion to voluntarily dismiss their counterclaims. ISR also asserts that its lawsuit caused Geerdes to cease using ISR's program in violation of the license agreement. We conclude that under Colorado law, Geerdes was a prevailing party in this litigation.

The parties' license agreement specifically authorizes the award of attorney fees and costs to the prevailing party in an action to enforce the agreement: "In the event it becomes necessary to enforce any provision of this Agreement, the

_____

[11] ISR's status as a prevailing party against Heumann and Shidler is not challenged on appeal.

prevailing party shall be entitled to all court costs and a reasonable attorney fee."

App. at 44. The license agreement, however, neither defines the term "prevailing

party," nor sets forth the criteria which a party must satisfy to be deemed a

prevailing party. We look to Colorado law to decide this issue. See Stichting

Mayflower Recreational Fonds v. Newpark Res., Inc., 917 F.2d 1239, 1248 (10th

Cir. 1990) (applying Utah law, including Utah law on the prevailing party

doctrine and the net judgment rule, to a Utah mining lease which contained a

provision entitling the prevailing party to recover reasonable attorney fees).

Under Colorado law, a prevailing party may recover attorney fees if

authorized by statute or contract. Wheeler v. T.L. Roofing, Inc., 74 P.3d 499, 503

(Colo. Ct. App. 2003).[12] In Dennis I. Spencer Contractor, Inc. v. City of Aurora,

884 P.2d 326, 327 (Colo. 1994) (en banc), the Colorado Supreme Court

announced "the standard for determining the prevailing party for purposes of

awarding attorney fees pursuant to a fee-shifting provision in a[n] . . . agreement

which provides for reasonable attorney fees to the prevailing party in any

enforcement action." The Colorado Supreme Court held that "where a claim

exists for a violation of a contractual obligation, the party in whose favor the

---

[12]    Although the license agreement contains a Florida choice of law provision,
the parties have applied Colorado law throughout the litigation. See Harvey I,
338 F.3d at 1133-34 (applying Colorado law to both the covenant not to compete
and the confidentiality provision of the license agreement); Harvey Barnett, Inc.,
143 F. Supp. 2d at 1251 (noting that the parties had stipulated that Colorado law
applies to the license agreement despite the Florida choice of law provision).

decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." Id. Under the test announced in City of Aurora, we conclude that Geerdes is a prevailing party against ISR, as the district court entered judgment in her favor after the jury found she was not liable on either of ISR's breach of contract claims.[13]

---

[13]    ISR contends that it is entitled to recover fees and costs as the prevailing party against Geerdes because Geerdes voluntarily dismissed her counterclaims. In Cantrell v. International Brotherhood of Electrical Workers, cited in ISR's brief, we held that a district court has discretion to award a defendant costs as a prevailing party under Fed. R. Civ. P. 54(d) when, in circumstances that do not involve settlement, a plaintiff voluntarily dismisses her case with or without prejudice. 69 F.3d 456, 456 (10th Cir. 1995) (en banc). Here, Geerdes decided not to pursue her counterclaims against ISR after the district court dismissed ISR's claims on summary judgment. Cf. id. at 459-60 (noting that the district court had discretion to determine on remand whether "saving judicial resources should be dispositive" in a denial of costs under Fed. R. Civ. P. 54(d)).

The issue of whether ISR should recover fees and costs against Geerdes as a result of her voluntary dismissal of counterclaims is pending before the district court. Our review of the pertinent procedural history reveals that in March 2003, ISR filed appeal No. 03-1083, and Heumann, Shidler, and Geerdes filed cross appeal No. 03-1107, challenging several rulings concerning attorney fees made by Judge Babcock, the first district judge assigned to the case. One of those rulings denied ISR's request for attorney fees in connection with Heumann, Shidler, and Geerdes's dismissed counterclaims. In August 2003, after our decision in Harvey I, Case No. 02-1047, we issued an order abating the appeals of the attorney fees issues in Case Nos. 03-1083 and 03-1107 on the ground that our remand in Harvey I would affect those appeals. In April 2004, Judge Figa, the second district judge assigned to the case, entered his Global Order on the parties' post-trial motions. In the Global Order, Judge Figa refused to address ISR's request for attorney fees based on the dismissed counterclaims. Judge Figa reasoned that the court was without jurisdiction to consider the issue because Judge Babcock's ruling was part of the pending appeals in Case Nos. 03-1083 and 03-1107. In May 2004, ISR filed the present appeal challenging Judge Figa's calculation of attorney fees under the prevailing party provision of the license agreement, Case

(continued...)

## 2. Reduction of Attorney Fees

ISR challenges the district court's decision to reduce its requested attorney fees by one-half because it prevailed on only one of its two breach of contract claims, as well as the district court's decision to reduce its requested attorney fees by one-third because it did not prevail against defendant Geerdes–one of the three defendants ISR had sued.

The district court's order states, in relevant part:

> Plaintiff tried two sets of claim[s] against these defendants: one for common law misappropriation of trade secrets and one for breach of contract. The attorneys' fees may be allowed only for the claim for breach of contract as they are based on the prevailing party provision. Since the work performed by counsel is not separated out in his affidavit, or by his billing records, this Court cannot determine which hours relate to which claim. However, as noted above, when a plaintiff brings multiple claims, and the claims involve a "common core of facts" or "related legal theories" a fee applicant may claim all hours reasonably necessary to litigate those issues. Thus, the Court will not reduce the fees based on the fact that the attorney's work on the trade secret claim may also have related to work on the contract claim on which plaintiff prevailed.
>
> However, the plaintiff brought two breach of contract claims under the license agreement against the Defendants Heumann and Shidler, one for breach of the covenant not to compete and one for

---

[13](...continued)
No. 04-1221. Finally, on July 2, 2004, this court lifted the abatement in Case Nos. 03-1083 and 03-1107, fully remanded the cases "for whatever additional proceedings deemed necessary with respect to attorney fee issues," and terminated the appeals. Accordingly, we conclude that we lack jurisdiction to consider Judge Babcock's denial of ISR's request for attorney fees and costs related to the dismissal of Geerdes's counterclaims. That issue has been remanded for any necessary proceedings before Judge Figa.

breach of the confidentiality provision, and prevailed on only the latter of these claims. Thus, the Court will award only one-half of the sub-total amount set forth above under the prevailing party language of the license agreement . . . .

Finally, since plaintiff prevailed only against Defendants Heumann and Shidler, and not against Defendant Gerdes, [sic] the court must reduce by one-third the lodestar amount, just as was done with Defendant Gerdes' [sic] fee request . . . .

App. at 174-75.

On appeal, ISR maintains that its lack of success on its breach of the covenant not to compete claim was not a proper ground for the district court to reduce its attorney fees by one-half. In support, ISR asserts that both of its breach of contract claims were substantially interrelated, and again emphasizes the success it achieved in the litigation.

In addition to the standard lodestar calculation, a district court may consider the reasonableness of the attorney fees in light of a party's success or lack thereof, and then adjust the fee upward or downward. Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1103 (10th Cir. 2005) (citation omitted). We believe that the Supreme Court's decision in Hensley v. Eckerhart, 461 U.S. 424 (1983), is instructive on this matter.[14] In Hensley, the Supreme Court explained that where a plaintiff is deemed the "prevailing party," despite success on only some

---

[14] We recognize that Hensley involved an award of attorney fees under 42 U.S.C. § 1988, as opposed to a private contract. Even so, we believe that Hensley's principles are sound and provide useful guidance on the issue at hand.

claims for relief, two considerations are important when awarding fees: (1) whether the plaintiff lost on claims that were unrelated to his successful claims; and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Id. at 434. The first consideration requires a court to determine whether the "plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories." Id. at 435. The second consideration requires a court to determine the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. The Supreme Court noted, however, that a fee reduction would be appropriate "if the relief, however significant, [was] limited in comparison to the scope of the litigation as a whole." Id. at 440.

Despite the considerable discretion the district court had in making its award of attorney fees, id. at 436-37, we question the district court's underlying rationale for reducing ISR's fees by one-half. As a starting point, the district court properly recognized that ISR was entitled to attorney fees for only its claims under the license agreement. Agritrack, Inc. v. DeJohn Housemoving, Inc., 25 P.3d 1187, 1193 (Colo. 2001); Harwig v. Downey, 56 P.3d 1220, 1222 (Colo. Ct. App. 2002); see also Stichting Mayflower, 917 F.2d at 1248. The district court then stated, consistent with Hensley, that "when a plaintiff brings multiple claims, and the claims involve a 'common core of facts' or 'related legal theories' a fee

-25-

applicant may claim all hours reasonably necessary to litigate those claims."
App. at 174. Applying this standard, the district court refused to reduce ISR's fees based on the lack of success on its misappropriation of trade secrets claim. But the district court then departed from this standard when it announced that because ISR prevailed on only one out of its two breach of contract claims, the court would reduce the requested attorney fees by one-half.

Hensley rejected a mathematical approach whereby a district court compares "the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435 (internal quotations omitted). Here, the district court followed this very approach, comparing the total number of claims ISR raised under the license agreement to the number of claims ISR prevailed on under the license agreement. Following Hensley, we conclude that the district court's apportionment of fees based on a success/failure ratio was erroneous.

Where claims, such as ISR's, are based on related legal theories and a common core of facts,[15] the district court must focus on the significance of the overall relief obtained. Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir. 1983); see

---

[15] For instance, we note that the license agreement's covenant not to compete prohibited Heumann, in relevant part, from "directly or indirectly . . . training other individuals for the purpose of teaching infants or young children to swim." App. at 42. Similarly, the license agreement's confidentiality provision prohibited Heumann from training or endeavoring to train instructors using ISR's methods without ISR's consent. Id.

also Robinson v. City of Edmond, 160 F.3d 1275, 1283 (10th Cir. 1998) (stating that "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award"). Here, the district court viewed ISR's lawsuit as a series of discrete claims, rather than addressing the significance of the relief ISR obtained against Heumann and Shidler–a total of $100,000 in liquidated damages and permanent injunctive relief—in light of the scope of the litigation as a whole.

We are also concerned with the district court's decision to reduce ISR's fees by one-third based on its unsuccessful claims against Geerdes. In Wayne v. Village of Sebring, 36 F.3d 517 (6th Cir. 1994), the Sixth Circuit rejected the rationale that a plaintiff's attorney fees should be reduced where the plaintiff is successful against some defendants, but not others, and the claims against all the defendants are related. The plaintiffs in Wayne brought civil rights claims under 42 U.S.C. §§ 1983 and 1985 against the Village of Sebring and its council members and manager. Id. at 522. The district court granted summary judgment in favor of the individual council members and manager. Id. During a jury trial, the district court entered a directed verdict against the Village of Sebring on the issue of liability and granted partial injunctive relief to the plaintiffs. Id. On appeal, the Sixth Circuit addressed several issues, including whether the district court abused its discretion in reducing the plaintiffs' requested attorney fees on the basis that "some of the hours claimed were spent on unsuccessful claims

against [the] dismissed [council members and manager]." Id. at 532. The Sixth Circuit concluded that the district court's reduction on that basis was improper:

> In the present case, there is only one common core of facts implicating both [the Village of] Sebring and the individual defendants who prevailed on summary judgment. No separate issues were raised against the prevailing defendants that were not raised against Sebring itself. . . . Under Hensley, it follows that Plaintiffs' claim for attorney fees should not be reduced simply because some indeterminate amount of time was expended on the prevailing individual defendants.

Id.

Similar to the plaintiffs in Wayne, ISR litigated its case against Heumann, Shidler, and Geerdes as a single action, and therefore its unsuccessful claims against Geerdes were substantially related to its successful claims against Heumann and Shidler. As ISR points out, even if it had not named Geerdes as a party to the action, Geerdes would still have been deposed and called as a witness at trial. Thus, ISR attorney fees were generated on the case as a whole, rather than on a party-by-party basis.

We are sympathetic to the district court's justification for reducing ISR's attorney fees. This case involves multiple claims and multiple parties, and neither side separated out the work for the court. But when such a case involves related claims and a common core of facts, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. We therefore

-28-

reverse the district court's award of attorney fees to ISR and remand for further proceedings consistent with this opinion.

## E. Scope of Preliminary Injunction

ISR argues that the district court's permanent injunction did not grant it complete relief for Heumann's and Shilder's breach of the confidentiality provision.[16] We review the scope of an injunction for abuse of discretion. The Post Office v. Portec, Inc., 913 F.2d 802, 813 (10th Cir. 1990), vacated on other grounds, 499 U.S. 915 (1991); see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539, 546 (6th Cir. 2005) (citation omitted); Dixon v. Edwards, 290 F.3d 699, 718 (4th Cir. 2002) (citation omitted).

ISR requested the following injunctive relief to protect its trade secrets and confidential information:

> 1. Defendants shall not train or endeavor to train instructors or assistants in the same and/or similar methods, materials, techniques, trade secrets, and/or systems used by ISR;
> 2. Defendants shall not use and/or divulge, disclose or communicate, to any other person or entity of any kind or type, any of the methods, materials, techniques, trade secrets, and/or systems used by ISR;
> 3. Defendants shall not write for publication any article concerning the methods, materials, techniques, trade secrets, and/or systems used by ISR in its business and shall not participate in interviews with any person or entity of any kind or type concerning the methods, materials, techniques, trade secrets, and/or systems used by ISR;

---

[16] To the extent ISR asserts that the district court's refusal to enter a permanent injunction against Geerdes was in error, the argument must fail. We agree with the district court that there was no basis to grant ISR injunctive relief against Geerdes as a result of the jury's verdict absolving her of all liability.

4. Defendants shall not allow any ISR materials, documents and/or training videos to be copied, reproduced or replicated in whole or in part;

5. Defendants shall surrender to ISR all ISR materials, documents and/or training videos;

6. Defendants shall cease any and all utilization and/or association with the name ISR and/or Harvey Barnett, Inc.

7. Defendants shall not divert and/or attempt to divert away any employees, licensees, and/or instructors of ISR.

App. at 171.

The district court denied the relief requested in paragraphs 1, 2, and 3. Id. at 168-72. Relying on Fed. R. Civ. P. 65(d), the district court ruled that it would not issue a vague or imprecise injunction regarding "'the methods, materials, techniques, trade secrets, and/or systems used by ISR.'" Id. The district granted the relief requested in paragraphs 4, 5, and 6. Specifically, the district court ordered Heumann and Shidler to:

> not allow any ISR materials, documents and/or training videos which may still be in their custody or control to be copied, reproduced or replicated in whole or in part;

> surrender to ISR all ISR materials, documents and/or training videos which may still be in their custody or control;

> cease any and all future utilization and/or association with the name ISR or Harvey Barnett, Inc., except that defendants may disclose that they were trained by ISR or Harvey Barnett, Inc., but any such disclosure, if made, should include a statement that they are no longer associated with ISR or Harvey Barnett, Inc.

Id. Finally, the district court denied the relief requested in paragraph 7 because the restriction emanated from the covenant not to compete and ISR had failed to

prevail on that claim at trial.  Id.[17]

ISR acknowledges that the district court's injunction adopted most of the language from paragraphs 4, 5, and 6.  Nevertheless, ISR challenges the district court's failure to include the language from paragraphs 1, 2, and 3.  We decline to disturb the district court's permanent injunction.  While the scope of the injunction arguably could have been broader in light of both the jury's general verdict that Heumann and Shidler breached the license agreement's confidentiality provision and the evidence ISR presented at trial, we cannot conclude that the district court's reasons for crafting a more limited injunction amounted to an abuse of discretion.  Cf. Starter Corp. v. Converse, Inc., 170 F.3d 286, 292 (2d Cir. 1999) (concluding that the district abused its discretion in ordering an injunction beyond the scope of the jury verdict); United States v. An Article of Drug, etc., 661 F.2d 742, 746-47 (9th Cir. 1981) (rejecting the argument that it was "impossible to tell from the general verdict which use or uses the jury found impermissible" because "the evidence was also heard by the judge, and the judge, not the jury, determined the scope of the injunction based upon the judge's view of the facts established by the evidence"). Our decision is

---

[17]     The covenant not to compete states, in relevant part, that "Licensee shall not . . . divert away any employees, licensees or other instructors of Licensor . . . ."  ISR does not challenge the district court's conclusion on paragraph 7.  Supp. App. at 26.

further supported by the fact that ISR's remedy against Heumann and Shidler for breach of the confidentiality provision was not confined to injunctive relief: the judgement against them for $50,000 each in liquidated damages also serves as a strong incentive to comply with all the terms of the confidentiality provision.

### III.

We AFFIRM the jury's verdict against Heumann, the district court's decision to award attorney fees to Geerdes as a prevailing party under the license agreement, and the scope of the district court's permanent injunction against Heumann and Shidler. We REVERSE the district court's award of attorney fees to ISR and REMAND for further proceedings consistent with this opinion.

Entered for the Court

Mary Beck Briscoe
Circuit Judge